JODI LINKER
Federal Public Defender
ELIZABETH FALK
NED SMOCK
Assistant Federal Public Defenders
450 Golden Gate Ave., FL. 19
San Francisco, CA 94102
Telephone: (415) 517-7716
Elizabeth_Falk@fd.org

Counsel for Defendant Cruz-Alvarez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>RICCY MABEL CRUZ-ALVAREZ,<br><br>Defendant. | Case no.: CR 24-449-VC<br><br>**DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION TO EXCLUDE OR LIMIT TESTIMONY OF DEFENSE EXPERT THOMAS BOERMAN**<br><br>Pretrial Conf: April 22, 2026<br>Time:          10:00 a.m.<br>Court:        Hon. Vince Chhabria |

**INTRODUCTION**

At trial in this matter the defense intends to offer testimony from Dr. Thomas Boerman, an expert on Honduran country conditions, human trafficking and labor exploitation by Honduran gangs, and forced labor initiated by Honduran and Mexican gangs and traffickers in the United States. Based upon his extensive experience, Dr. Boerman will provide relevant background on the above subjects, explain why it is reasonable to fear harm if one does not comply with demands of gangs and traffickers in the United States, and explain why a forced labor victim would perceive reporting their situation to law enforcement as a potential death sentence for themselves and/or family members in Honduras.  This proposed testimony is directly relevant to

1

the defense Ms. Cruz-Alvarez will present at trial under either the Trafficking Survivor Relief Act ("TSRA"), 18 U.S.C. § 28, or common law duress. Dr. Boerman's testimony will provide crucial background information on the situation in Honduras, Honduran gangs, and their practice of utilizing threats of violence to coerce Hondurans in the United States into performing labor for them. This subject matter is not something the average juror is familiar with and it will definitely assist the jury to understand or determine a fact in issue.  *See* Fed. R. Evid. 104(a). Dr. Boerman is eminently qualified to offer this testimony based upon his more than 30 years of experience as a researcher and investigator on societal violence and human trafficking in Central America, Mexico, and the United States. In addition to more than a dozen research trips to Honduras, Dr. Boerman has had extensive communication with Hondurans who have been coerced into labor service in the United States. For these reasons Dr. Boerman has been repeatedly qualified in San Francisco Superior Court as an expert in the areas proposed by the defense here. The government's motion to exclude or limit Dr. Boerman's testimony in this case should be denied.

**ARGUMENT**

**I.    Dr. Boerman's proposed testimony is directly relevant to Ms. Cruz-Alvarez's defense.**

The government contends that Dr. Boerman's testimony is irrelevant and should be excluded because there is no evidence that the defendant was a victim of forced labor.  U.S. Opp., Dkt. No. 96 at 4.  This objection is both erroneous and premature, as the evidence will be introduced during the defense case at trial. Dr. Boerman provides crucial information and background related to the evidence that will be presented in support of Ms. Cruz-Alvarez's defense. While Ms. Cruz-Alvarez can testify about her own lived experience, it is important for the jury to understand the broader history and context behind her experience. Absent this information, the jury might be left with the impression that her experience is somehow unique and therefore less credible.  The jury might also unfairly doubt that her fear was both realistic and well-grounded, which it was.

Among other things, the jury needs to understand the extent to which gangs in Honduras exert control over the population through intimidation and violence and how there is a perception that gangs benefit from close connections to corrupt law enforcement officials. The jury needs to understand the extent to which these gangs have become transnational, are able to exert continued control over individuals within the United States, and how threats from gang members are reasonably perceived as threats not just to the threatened person, but also to that person's family members in Honduras.

All of these facts are directly relevant to mount a successful defense under the TSRA. The TSRA provides that Ms. Cruz-Alvarez can establish duress by demonstrating that she was a "victim of trafficking." 18 U.S.C. § 28(b). A "victim of trafficking" is defined to include a person who was obtained for labor through the use of force and coercion "for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery." 18 U.S.C. § 7102(11)(B). Dr. Boerman's testimony directly supports this defense. Dr. Boerman's testimony would also be relevant to establish a common-law duress defense should the Court hold that Ms. Cruz-Alvarez is still required do so despite passage of the TSRA (a legal contention that the defense disputes). Were the Court to so hold, Dr. Boerman's testimony would be relevant to establish that Ms. Cruz-Alvarez was under immediate threat of serious bodily injury to herself or a family member, that she had a well-grounded fear that any such threats would be carried out, and that she did not have reasonable opportunities to escape the threatened harm. Ninth Circuit Criminal Model Jury Instructions, 5.7. Thus Dr. Boerman's testimony is clearly relevant, as it "has any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

As to the government's concern about lack of notice, that issue is addressed in Ms. Cruz-Alvarez's opposition to United States Motion in Limine No. 7. With respect to Dr. Boerman in particular, the defense has no objection to the Court postponing its decision on the government's objection to Dr. Boerman's testimony on relevance grounds until the defense presents evidence during its case in chief in support of its TSRA defense – or common-law duress should the Court

hold that she is still required to do so despite passage of the TSRA.

## II.     Dr. Boerman's proposed testimony is admissible under Rule 702.

The government's next argues that Dr. Boerman is not qualified to testify about human trafficking in the United States or the activities of organized crime groups in the United States. U.S. Oppo. at 6.  Not so. As the government acknowledges, expert testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Dr. Boerman has extensive knowledge and experience in the areas about which he will be asked to testify.  While Dr. Boerman certainly possesses a great deal of knowledge about activities of gangs in Honduras, he also possesses specialized knowledge of how those transnational gangs operate within the United States. And to be clear, knowledge about the modus operandi of a gang in Central America is by no means irrelevant to that same gang's modus operandi in the United States. Dr. Boerman will testify that Central American gangs are entrenched in the United States.  His research, including interviews, consultation with other experts in the field, and review of literature, have given him extensive knowledge about practices of Central American organized crime groups and their victimization of individuals within the United States. Indeed, he is currently engaged in an analysis of human trafficking by Central American organized criminal groups in Central America, Mexico, and the United States and has spoken to approximately 200 people who have been victims of human trafficking in the drug trade.

It is for these reasons that Dr. Boerman has been qualified as an expert in the areas proposed by the defense repeatedly at trial in San Francisco Superior Court.  For example:

- Qualified as an expert in country conditions in Central America including Honduras; nature and scope of organized crime groups and gangs in Central America; mechanisms of coercion on victims of human trafficking in the United States by Central American organized crime groups and gangs; effect of coercion on victims of human trafficking including those in the drug trafficking industry; dangers to individuals coerced into criminal service by organized criminal groups and gangs; conditioning of the public in Central America due to organized criminal groups' extremes of violence; and nontraditional forms of human trafficking and modern-day slavery in the context of labor exploitation. *People v. Arteaga Rodriguez,* Case No. CRI-22000445, San Francisco

Superior Court, January 25, 2023.

- Qualified to testify to testify as an expert in country conditions in Central America, including Honduras; modern-day slavery and human trafficking; nature and scope of organized crime in Central America, including Honduras, Mexico and the United States; mechanisms of coercion on victims of human trafficking in the United States by organized criminal groups; dangerous individuals coerced into criminal service by organized criminal groups or gangs; conditioning of the public in Central America, including Honduras, by organized criminal groups; and mental health effects of coercion on victims of human trafficking. *People v. Rosales-Silva*, Case No. CRI-22005303, San Francisco Superior Court, September 19, 2023.

To the extent the Court has any remaining concerns about the basis of Dr. Boerman's knowledge about conduct of Central American organized crime groups within the United States in particular, the government can be permitted to inquire further at a *Daubert* hearing or through voir dire of Dr. Boerman outside the presence of the jury before the Court decides the scope of his permitted testimony. And if the government believes that Dr. Boerman is incorrect that Central American gangs have evolved into transnational criminal organizations involved in human trafficking, or that these gangs coerce Hondurans living in the United States into drug trafficking, they are welcome at trial to cross examine Dr. Boerman and even to call their own expert to in rebuttal.  Of course, this would be a position directly at odds with public statements and law enforcement priorities of the Department of Justice. *See e.g.* DOJ Press Release, *More than 700 Members of Transnational Organized Crime Groups Arrested in Central America in U.S. Assisted Operation*, available at https://www.justice.gov/archives/opa/pr/more-700-members-transnational-organized-crime-groups-arrested-central-america-us-assisted. ("Authorities also announced the arrest of 36 individuals in El Salvador and Honduras involved in human smuggling networks that span Central America and the United States.").

With respect to the government's final stated concern, the defense will not seek to elicit Dr. Boerman's opinion about whether Ms. Cruz-Alvarez herself was trafficked. Dr. Boerman did not interview Ms. Cruz-Alvarez or review discovery specific to this case.  He is being called to provide information to the jury about Central American gangs, their use of violence and intimidation in Honduras, their transnational reach and involvement in human trafficking both in

Central America and the United States, and why victims of such conduct would reasonably believe that were they to seek help, they and their family members would face dire consequences. This is specialized knowledge that will help the trier of fact to understand the evidence, it is based upon extensive research and investigation, and it is the product of reliable principles and methods.  The proposed testimony is admissible under Rule 702.

## CONCLUSION

For the foregoing reasons, Ms. Cruz-Alvarez respectfully requests that this Court deny the government's motion to exclude or limit Dr. Boerman's testimony at the upcoming trial.

Dated:    April 8, 2026                                  Respectfully submitted,

                                                         JODI LINKER
                                                         Federal Public Defender
                                                         Northern District of California

                                                              /S
                                                         NED SMOCK
                                                         ELIZABETH FALK
                                                         Assistant Federal Public Defenders